ELVIRA SINCLAIR, Respondent, v. LYDIA M. PURDY, as Administratrix, etc., of ELIJAH F. PURDY, Deceased, Defendant, Impleaded with EDWIN G. COREY and Another, as Executors, etc., of ELVIRA PURDY, Deceased, and LETITIA ROBIN, Appellants, JENNIE A. MAPES, Respondent, and GUY DALY and Others, Defendants.

First Department, May 29, 1925.

Vendor and purchaser — counterclaim in partition to enforce agreement between testator and third person whereby testator agreed to will interest in land to said third person — consideration for alleged agreement stated to consist of personal care of testator by third person — said third person and testator were relatives and said third person was paid by testator for board — Statute of Frauds — written contract not proven as required by Real Property Law, § 259 — error to admit testimony as to conversations between third person and testator tending to show contract — acts done by third person for benefit of testator not of character or extent to establish part performance of existing contract to convey real property — no trust arising out of confidential relations was established — no estoppel of person to be benefited by decision adverse to third person.

In an action for partition in which a counterclaim was interposed by a third person demanding the specific performance of an agreement between the testator and said third person whereby the testator agreed to convey his interest in certain premises to the third person in consideration for her care and personal attention during the remainder of his life, the evidence does not show the execution of a written agreement by. the testator as required by section 259 of the Real Property Law.

It was error for the court to admit testimony as to conversations between the testator and the third person, which tended to establish the making of the contract alleged, for that testimony is in direct contravention to the requirements of section 259 of the Real Property Law.

Since it appears that the testator and the third person were relatives and that the testator paid for his board during the sixteen years he was cared for by said third person, the acts performed by the third person which consisted of nursing and personal attention as well as board for the testator, were not of the character nor extent necessary to establish the existence of a contract by the testator to convey an interest in lands to the third person; such acts to be sufficient must be so clear, certain and definite in their object and design as to refer to a complete and perfect agreement of which they are a part execution; they must be unequivocal in their character and must have reference to the carrying out of the agreement.

There is no merit in the contention by the third person that the defense of the Statute of Frauds is not available because a confidential relation existed between her, the testator, and his sister, the effect of which gave rise to the implication of a trust, in respect to the property, for the benefit of the third person, and that to refuse to enforce the rights of the third person under such an implied trust would be to use the Statute of Frauds as an instrument of fraud, and

that, therefore, an estoppel existed against asserting that no contract was made, for it appears that the will of the testator which failed to devise the property to the third person, was executed prior to the making of the alleged contract, so that there was no abuse of a confidential relationship by the testator.

It cannot be contended that the testator's sister, who will benefit by a holding that the third person is not entitled to the property, is estopped from asserting her rights on the ground that she knew of and acquiesced in the contract, since it appears that she did not have knowledge of the execution of the alleged contract until several months after it was made, and furthermore, that contention assumed the existence of an agreement which was not proven.

APPEAL by Edwin G. Corey and another, as executors, etc., of Elvira Purdy, deceased, and another, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 10th day of June, 1924, denying said defendants' motion to set aside the verdict of a jury rendered in the above-entitled action; also from certain parts of an interlocutory judgment made at the New York Special Term and entered in the office of the clerk of the county of New York on the 2d day of December, 1924, and also from an order made at the New York Special Term and entered in said clerk's office on the 15th day of December, 1924, denying said defendants' motion to set aside certain portions of the verdict of a jury and to dismiss the counterclaim of the respondent Jennie A. Mapes.

The action is for partition of lands known as 337 and 339 East Twenty-third street, in the borough of Manhattan, city of New York. The complaint alleges that at the time of his death, November 8, 1914, Elijah F. Purdy and his sister, Elvira Purdy, were tenants in common of the lands above mentioned; that letters of administration upon the estate of Elijah F. Purdy were issued to defendant Lydia M. Purdy, his widow, on June 18, 1915, and that subsequently, on November 26, 1918, the will of Elijah F. Purdy, deceased, was admitted to probate; that Elvira Purdy died November 17, 1917, leaving a will which was admitted to probate July 9, 1918, and that letters testamentary were thereafter issued thereon to the defendants, appellants, Edwin G. Corey and George H. Corey, as executors; that although said will purports to devise the premises 339 East Twenty-third street to the defendant, appellant, Letitia Robin, it in fact and in law only devises such interest therein as Elvira Purdy had at the time of her death; that the plaintiff and certain of the defendants are tenants in common of the premises and that the defendant, appellant, Letitia Robin, claims some interest therein under the will of Elvira Purdy, the nature and extent of which is unknown to plaintiff.

The answer of the appellants, the executors of Elvira Purdy, and the devisee under her will, denies that Elijah F. Purdy had any

interest in the lands; admits the probate of the will of Elijah F. Purdy and alleges that by said will any interest which Elijah F. Purdy had in the lands was devised to his sister Elvira and that she at her death was seized in fee of the lands and by her will devised 339 East Twenty-third street to the appellant Letitia Robin, and that 337 East Twenty-third street not having been devised descended to the heirs of Elvira Purdy.

The respondent Jennie A. Mapes by her answer alleges as a counterclaim that Elijah F. Purdy was at all times the owner of an undivided one-half interest in the lands; that during his lifetime in the year 1898 he made a contract with the respondent Mapes whereby he agreed to devise to her his interest in the lands in consideration of her permitting him to live with her for the rest of his life and of her care, nursing and attention to him, wherefore she prayed for specific performance of such agreement and that she have his alleged interest in the lands. The appellants replied to the counterclaim of the respondent Mapes denying that Elijah F. Purdy had any interest in the lands and stating they had no knowledge or information sufficient to form a belief as to the alleged contract between the respondent Mapes and Elijah F. Purdy.

On the issues thus presented by the pleadings questions were framed for trial by a jury. No question as to the wills of Elijah F. Purdy and Elvira Purdy was framed, this court having decided that the wills were plain and unambiguous, had been admitted to probate and that the decrees admitting them were conclusive. (*Sinclair* v. *Purdy*, 195 App. Div. 398, 400.) The questions thus stated were brought on for trial before a jury at Trial Term in May, 1921. On that trial and for the purpose of that trial only these appellants stipulated that the contract between the respondent Mapes and Elijah F. Purdy was entered into and performed and thereupon the trial proceeded solely on the questions as to whether Elijah F. Purdy had any interest in the lands. The court directed a verdict to the effect that Elijah F. Purdy had no interest in the lands. On that verdict a judgment was entered in favor of appellants which this court affirmed. (*Sinclair* v. *Purdy*, 202 App. Div. 797.)

On appeal to the Court of Appeals that court decided the trial justice erred in directing the verdict above mentioned and ordered a new trial. (*Sinclair* v. *Purdy*, 235 N. Y. 245.) These appellants thereupon moved to be relieved from the stipulations entered into by them on the trial above mentioned relative to the alleged agreement between Elijah F. Purdy and the respondent Mapes and an order so relieving them was entered on May 15, 1923. Thereupon these appellants moved for leave to serve an amended reply to the

counterclaim of the respondent Mapes setting up the Statute of Frauds as an additional defense to the claim of said respondent for specific performance of her alleged contract with Elijah F. Purdy. Such leave was granted by order entered November 14, 1923, and the amended reply of these appellants was served accordingly.

Upon the pleadings as thus amended the cause was again brought on for trial upon the questions framed as above stated before a jury at Trial Term. At the close of the case of the defendant Mapes these appellants moved to strike out all testimony wherever found in the record and admitted over the objections and exceptions of these appellants about conversations purporting to show the existence of an oral agreement between Mr. Purdy and Mrs. Mapes on the ground that all such testimony was incompetent under the plea of the Statute of Frauds. This motion was denied and exception duly taken. These appellants then moved that the court instruct the jury in passing upon the issues to disregard all of such testimony. This motion was also denied and exception duly taken. After offering in evidence certain papers in relation to the title to the premises appellants rested without offering any testimony on the subject of the alleged agreement and moved the court to direct the jury to answer the questions as to the existence of an agreement in the negative; and not to answer the questions relating to what was done under an agreement. Also to direct the jury not to answer the question relating to the value of the services rendered by Mrs. Mapes on the ground that there was no evidence in the case of such value. All such motions were denied and these appellants duly excepted. The court was requested to charge the jury in relation to question 19, as to the existence of the alleged agreement between Elizabeth F. Purdy and the defendant Jennie A. Mapes, that in arriving at the answer to that question they disregard the testimony of all the witnesses about conversations between the witnesses and the contracting parties at which the terms of the alleged agreement were discussed, which request the court declined and these appellants duly excepted. The court was then requested to charge with respect to the answer to question 25, relating to the value of the services rendered by the defendant Mapes, that there was no evidence in the case from which the jury might determine such value. This request was likewise refused and exception taken. The trial resulted in a verdict of the jury finding that Elijah F. Purdy was a tenant in common of the premises and that he had in his lifetime entered into a contract with the respondent Mapes as her counterclaim alleges. Upon the rendering of the verdict these appellants moved on the minutes of the trial and upon all the exceptions taken by them on the trial to set aside the verdict

so far as it constituted answers to questions regarding the making of the agreement set up in the counterclaim, performance thereof by defendant Mapes, and the value of the services rendered under said alleged agreement, upon the ground that in each instance the verdict was against the weight of the evidence, contrary to the evidence and contrary to law. This motion was denied and from the order denying the same this appeal is taken.

Defendant Mapes thereupon applied to the court at Special Term for judgment. These appellants procured a case to be settled by the trial justice and filed, and thereupon gave notice that upon the case so settled and filed they would on the hearing of the motion for judgment apply to the court to set aside that part of the verdict comprised in the answers of the jury to said questions and to dismiss the counterclaim of the defendant Jennie A. Mapes herein. The court at Special Term denied the appellants' application and rendered judgment on the application of the defendant Mapes, and that order and judgment are also brought up for review on this appeal. Exceptions were filed by these appellants to the decision of the court at Special Term.

Appellants now urge two propositions for the consideration of this court: (1) Was there introduced upon the trial legal proof of the alleged agreement between the defendant Mapes and Elijah F. Purdy in view of the defense of the Statute of Frauds pleaded by these appellants? (2) Was there sufficient evidence in the case of such degree of credibility as to justify a court of equity in decreeing specific performance of the alleged agreement?

The answers given by the jury to questions to the effect that Elijah F. Purdy had an interest in the lands, are answers that the Court of Appeals has decided a jury might make upon the evidence adduced upon the first trial; and since the evidence upon the second trial to sustain that part of the verdict is substantially as it was upon the first trial, it is not intended by appellants on this appeal to review that feature of the case, for the reason that any interest Elijah F. Purdy may be found to have had in the lands passed at his death, by the provisions of his will, to his sister Elvira.

On the other hand, the answer given by the jury finding the existence of the alleged contract between Elijah F. Purdy and the respondent Mapes, and the answers to the questions relating to said alleged contract, constitute that part of the verdict which appellants ask to be reviewed on this appeal, since it is claimed the findings of the jury as indicated by said answers seriously impair the rights of these appellants derived through the will of Elijah F. Purdy.

*George H. Corey,* for the appellants.

*C. F. Swart [Vincent S. Lippe* of counsel; *A. H. Parkhurst* with him on the brief], for the respondent Mapes.

BURR, J.:

This action is in partition. The sole question arising here and to be disposed of on this appeal is as to the existence and validity of the alleged agreement set up by the defendant Mapes in her counterclaim.

The defense of the Statute of Frauds to the counterclaim of the defendant Mapes is alleged as a second separate reply to said counterclaim in the amended reply of these appellants. The statute so pleaded is section 259 of the Real Property Law (formerly enacted in 1896 as section 224 of the Real Property Law), which provides as follows: "A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the lessor or grantor, or by his lawfully authorized agent."

The defendant Mapes alleges a contract pursuant to which Elijah F. Purdy agreed to devise to her all his interest in the premises in question, a contract which under the authorities falls squarely within the class of contracts referred to in the statute above quoted. Mrs. Mapes founds her claim upon such an express contract. There is no pretense that she claims upon any implied contract to recover the value of services rendered. So far as this action is concerned, her claim, if she has one, stands solely upon the contract she has alleged and upon no other ground. (*Banta* v. *Banta,* 103 App. Div. 172.)

In view of the provisions of the statute it is obvious that proof of her claim must be either (1) an agreement in writing expressing the consideration and signed by E. F. Purdy or his lawfully authorized agent, or (2) performance by her of acts unequivocally referable to such an agreement, which alone and without the aid of words of promise point with certainty and definiteness to the existence of such a contract.

No writing such as is contemplated by the statute was offered upon the trial. There was introduced in evidence over the objection and exception of these appellants a paper marked "Defendant Mapes' Exhibit 29." This paper was not signed by any one. It was written by the witness Daly at the dictation of Mr. Purdy; and after it was written out the witness read it over to Mr. Purdy, who stated "That won't do." On another occasion Mr. Henry

A. Vieu, a lawyer, was called in consultation. He testified that as the result of the consultation he prepared papers. One of these papers was produced and offered in evidence. It was objected to as a privileged communication and was excluded. It appears in the record as defendant Mapes' Exhibit 33 for identification. It was not signed by any one. On the examination of Miss Purdy which was read in evidence she was interrogated regarding a proposed paper relating to the question of paying some money, about $5,000, to Mrs. Mapes, and she testified to the effect that she refused to sign such a paper, and that Mrs. Mapes also expressed dissatisfaction with the amount that the paper proposed to give her, and that thereupon her brother, Mr. Purdy, stated that " it is all off."

Counsel for the appellants was then requested to produce the paper referred to by Miss Purdy. In reply counsel produced a paper stating that he did not know if that was the paper that the witness referred to. It was offered in evidence and excluded as incompetent, irrelevant and immaterial, as not signed by anybody and not binding upon anybody. It appears, however, in the record as defendant Mapes' Exhibit 38 for identification. It is obvious, therefore, that the defendant Mapes failed to establish the contract she alleges by that form of evidence.

Witnesses called for the defendant Mapes testified over the objection and exception of these appellants to having heard conversations between Mrs. Mapes and E. F. Purdy, which if correctly reported by the witnesses, would tend to show existence of an oral contract such as is alleged as the basis of the counterclaim. Motions made by these appellants to strike out all such testimony were denied and the testimony was allowed to stand and to go to the jury. Such testimony should not have been admitted and should now be disregarded for the reason that the only effect thereof was to tend to show the possible existence of an oral promise which the statute declares to be void.

Courts of equity under certain circumstances and in order to prevent the Statute of Frauds being used as an instrument for the perpetration of a fraud do, upon evidence of performance of a certain character, disregard the provisions of the statute and decree to be done that which the performance of such acts shows should have been done; but in so acting equity bases its relief solely upon acts and never upon words. Equity will grant relief only when such acts unequivocally refer to the existence of a contract, and when the acts alone, without the aid of words of promise, point with certainty and definiteness to the existence of a contract.

The witness Daly testified to the effect that Mrs. Mapes nursed

E. F. Purdy when he was sick; provided delicacies for him; later on in the period of years he resided with her, she would have to help him to the bath room; she would have to go upstairs at night when he went to sleep and sit and talk with him until he went to sleep; that he had seen her go up with a tray with soups, delicacies, custards and things that Mr. Purdy had to have; that Mr. Purdy was an old man; that he "walked decrepit;" that he was in bed about half the time, that is, confined to his bed, either in his room or in his bed; that he was frequently ill; and that Mrs. Mapes would bathe Mr. Purdy's head and his hands with alcohol.

The witness Matilda C. Kirchner testified that Mr. Purdy had an operation performed on him in her house " and of course I had to take care of him, except only when Mrs. Mapes would come, she, of course, came every day, every morning, every noon and night; " that Mrs. Mapes attended to giving Mr. Purdy his medicines and dressing his arm; that these attentions continued for three months while Mr. Purdy was in the home of the witness, and that afterwards when Mr. Purdy had returned to Mrs. Mapes' home witness saw Mrs. Mapes doing acts tending to Mr. Purdy's comfort. The witness Frederick Meschko also testified to having seen Mrs. Mapes on occasions render services of similar nature to Mr. Purdy.

This testimony failed to show performance of acts of the character and extent necessary to establish the contract upon which the respondent Mapes bases her claim.

The principles above stated are well fortified by authorities in this State, which authorities likewise establish the character and extent of the acts of performance necessary to move a court of equity to grant relief.

In *Woolley* v. *Stewart* (222 N. Y. 347) it is said: " The acts must, however, be so clear, certain and definite in their object and design as to refer to a complete and perfect agreement of which they are a part execution — must be unequivocal in their character and must have reference to the carrying out of the agreement. An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance."

In *Burns* v. *McCormick* (233 N. Y. 230, 232) it is said: " There must be performance ' unequivocally referable ' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing. * * * What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done. The

housekeeper who  *  *  *  renders service without pay upon the oral promise of her employer to give her a life estate in land, must find her remedy in an action to recover the value of the service  *  *  *.  Her conduct, separated from the promise, is not significant of ownership either present or prospective  *  *  *. Promise and performance fail when these standards are applied. *  *  *  Whatever rights they had, were executory and future. The tokens of their title are not, then, to be discovered in acts of possession or dominion.''

In *Sleeth* v. *Sampson* (237 N. Y. 69, 73) it is said: '' To be thus effective, they must be of such a nature as to be ' unintelligible or at least extraordinary ' unless related to a contract to convey an interest in land.  *  *  *  The payment of money is not enough, unless followed by other acts, as, for example, possession or improvements  *  *  *.  Acts merely ancillary or preliminary to performance are not acts of part performance within the equitable doctrine.''

While the similarity of the circumstances in the instant case with those in *Burns* v. *McCormick* (*supra*) is striking, the instant case presents even stronger reasons for sustaining the defense of the statute than were presented in *Burns* v. *McCormick* (*supra*). In that case claimants were actually upon the premises in question. They surrendered a home, sold out a business and boarded and cared for the old man during his lifetime, paying the food bills for him as well as for themselves and doing the work of housekeepers. In the instant case the claimant makes no pretense of being on the property at any time. She had no possession, gave up no home, parted with no business and while tending, nursing and caring for the old man she asked and received payment for his board, first at the rate of twenty-five dollars per month, which she subsequently increased to thirty dollars, and later still increased to forty dollars per month.  If as found in *Burns* v. *McCormick* (*supra*) the acts of performance were equivocal still greater reason exists for finding them equivocal in this case.  In *Burns* v. *McCormick* (*supra*) they were found to be equivocal for the reasons, as stated by the court, that the board that was paid by the claimants might have been given in return for lodging, might have been merely an advance to be refunded in whole or in part; that time and care might have been bestowed from a vague anticipation that the affection and gratitude so claimed would in the long run insure some indefinite reward, particularly as there were ties of kinship between one of the plaintiffs and the owner.

All those observations and reasons exist in the instant case, even to the extent that there were ties of kinship between the

claimant and Elijah F. Purdy. And still another reason is found in the fact that in the instant case the claimant actually charged and received from Mr. Purdy board instead of paying it out for him. Her acts point more consistently to an arrangement whereby a housekeeper took in a boarder, cared for him and received her compensation in money for board (an arrangement which could be terminated at any time by either party, as in fact it was terminated before the death of Mr. Purdy) than to any other arrangement; and they are, therefore, not of that unequivocal, certain and definite character that the law, as above outlined, required.

It is claimed on behalf of the defendant Mapes that these appellants might not avail themselves of the defense of the statute because a confidential relation existed between the defendant Mapes, Mr. Purdy and his sister, Elvira Purdy, the effect of which gave rise to the implication of a trust in respect of the property for the benefit of the defendant Mapes; that to refuse to enforce the rights of the defendant Mapes under such an implied trust would be to use the Statute of Frauds to perpetrate a fraud rather than to prevent one; and that, therefore, these appellants should be estopped from asserting that no contract existed. But from the terms of the statute and from the reasoning in *Burns* v. *McCormick* (*supra*) these contentions of counsel are without merit.

In *Burns* v. *McCormick* (*supra*) it was held that no confidential relation had been abused; that no inducement had been offered with the preconceived intention that it would later be ignored; that the most that could be said against the alleged promisor was that he had made a promise which the law did not compel him to keep; and that afterwards he failed to keep it. And further the court says (at p. 235): " We cannot even say of his failure that it was willful. He had made a will before the promise. Negligence or mere inertia may have postponed the making of another. The plaintiffs left the preservation of their agreement, if they had one, to the fallible memory of witnesses. The law exacts a writing."

In the instant case we have the fact that Mr. Purdy made a will before the alleged promise. That will is found to have been admitted to probate. It was, therefore, his last will. There can be no reason, therefore, for holding in this case that there has been any abuse of a confidential relationship. If the alleged promisor in *Burns* v. *McCormick* (*supra*) were guilty of no such abuse, it cannot be said that Mr. Purdy was; and he being innocent of any such offense, it is impossible to attribute such an offense to his successors in title.

It was claimed by the respondent Mapes on the trial that Elvira Purdy, the sister of Elijah, knew of the existence of the alleged

agreement and suffered Mrs. Mapes to continue to render service for sixteen years without protest, and that for such reason she should not be permitted to accept a devise that her brother had a perfectly legal right to make; and the court at Special Term in its fourth finding of fact has found that the agreement was entered into with the knowledge, consent and approbation of Elvira upon the understanding and representation made by Elijah to the defendant Mapes in the presence of Elvira that he was the owner of an undivided one-half interest in the premises. But that argument assumes the existence of an agreement which is the very issue here involved, an agreement the existence of which must first be proven. As has been shown, the evidence produced to establish it falls far short of that legal evidence which the law as interpreted by the Court of Appeals requires.

Furthermore, it appears, any information Elvira might have acquired and any approval she might have expressed was long after the time the alleged agreement is said to have been made. In this respect the finding at Special Term above alluded to is contrary to the evidence. Elvira neither induced the agreement to be entered into, nor is she shown to have had any information about it until four months after it was said to have been made. She could then neither alter nor change any agreement if one had been made, nor was there any duty resting upon her to do so.

The purpose of the Statute of Frauds, as declared by the Court of Appeals, is to prevent mischief that the statute would suppress, and equity in dealing with the provisions of the statute does not ignore its provisions.

Quoting further from the opinion in *Burns* v. *McCormick* (*supra*), the following language is enlightening on this point. At page 234 we read: "It [the Statute of Frauds] is 'intended to prevent a recurrence of the mischief' which the statute would suppress * * *. The peril of perjury and error is latent in the spoken promise. Such, at least, is the warning of the statute, the estimate of policy that finds expression in its mandate. Equity, in assuming what is in substance a dispensing power, does not treat the statute as irrelevant, nor ignore the warning altogether. It declines to act on words, though the legal remedy is imperfect, unless the words are confirmed and illuminated by deeds. A power of dispensation, departing from the letter in supposed adherence to the spirit, involves an assumption of jurisdiction easily abused, and justified only within the limits imposed by history and precedent. The power is not exercised unless the policy of the law is saved."

29

The policy of the law regarding claims of the nature of that asserted by the respondent Mapes was clearly set forth by the Court of Appeals in *Hamlin* v. *Stevens* (177 N. Y. 39, 47, 50), as follows: " Contracts of the character in question have become so frequent in recent years as to cause alarm, and the courts have grown conservative as to the nature of the evidence required to establish them, and in enforcing them, when established, by specific performance. Such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises. They are the natural resort of unscrupulous persons who wish to despoil the estates of decedents. * * * Such contracts are dangerous. They threaten the security of estates and throw doubt upon the power of a man to do what he wills with his own. The savings of a lifetime may be taken away from his heirs by the testimony of witnesses who speak under the strongest bias and the greatest temptation, with all the dangers which, as experience shows, surround such evidence. The truth may be in them, but it is against sound policy to accept their statements as true, under the circumstances and with the results pointed out. Such contracts should be in writing, and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses. Unless they are established clearly by satisfactory proofs and are equitable, specific performance should not be decreed. We wish to be emphatic upon the subject, for we are impressed with the danger, and aim to protect the community from the spoliation of dead men's estates by proof of such contracts through parol evidence given by interested witnesses."

That there never was any definite agreement between the respondent Mapes and Mr. Purdy is clearly demonstrated by the fact that as late as the year 1913 the parties undertook to then come to an agreement wholly different in its terms and provisions from that under which the respondent Mapes claims.

Under the Statute of Frauds and the cases above cited, and in view of the policy of the law as laid down in *Hamlin* v. *Stevens* (*supra*), I am of the opinion that the defendant Mapes has failed to prove a contract either by writing or by satisfactory proof of an oral contract, and that her claim in this action, that she is entitled to the property left by Elijah Purdy, is without foundation either in law or in equity. (*Robinson* v. *Munn*, 238 N. Y. 40.)

. The orders appealed from should be reversed; the motion made at Special Term to set aside the verdict, so far as it relates to the alleged contract should be granted, and the interlocutory judgment

appealed from should be modified accordingly, with costs to the appellants to be paid out of the estate.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Orders reversed, motion to set aside verdict so far as it relates to alleged contract granted, and interlocutory judgment modified accordingly, with costs to appellants payable out of the estate. Settle orders on notice. _____